**David SPIETZ, Plaintiff,**

v.

**KAISER ALUMINUM AND CHEMICAL CORPORATION, et al., Defendants.**

**No. C86–597TB.**

United States District Court,
W.D. Washington,
at Tacoma.

June 16, 1987.

James R. Orlando, Rovai, Miller, Foley, Orlando & Larkin, Tacoma, Wash., for plaintiff.

Joanne Henry, of Johnson, Lane & Crawford, Tacoma, Wash., and Theodore C. Borromeo, Labor and Employment Counsel, Kaiser Aluminum & Chemical Corp., Oakland, Cal., for defendant Kaiser Aluminum.

Robert H. Gibbs, of Gibbs, Douglas, Theiler & Drachler, Seattle, Wash., and Rudolph L. Milasich, Jr., United Steelworkers of America, Pittsburgh, Pa., for defendant United Steelworkers, Local 7945.

BRYAN, District Judge.

THIS MATTER comes before the Court upon the Motions for Summary Judgment of defendants Kaiser Aluminum and Chemical Corporation ("Kaiser") and United Steelworkers of America, Local 7945's ("Union"). The motion brought by the Union raises the following issues:

1. Whether plaintiff's claim is barred by the six-month statute of limitations set forth in section 10(b) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 160(b); and

2. Whether the Union breached its duty of fair representation of the plaintiff pursuant to section 302 of the LMRA.

Kaiser, in its motion, joins in the Union's second issue and raises the following additional issues:

1. If the Union did not breach its duty of fair representation, does a cause of action exist against Kaiser; and

2. Whether plaintiff's claim for emotional distress is preempted by federal law and, therefore, must be dismissed.

The court has reviewed the memoranda of counsel, affidavits, exhibits and records and files herein, and rules as follows:

The grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1968).

## FACTUAL BACKGROUND

The following facts are undisputed by the parties:

The plaintiff was hired by Kaiser at its Tacoma plant in December 1980 and became a member of the Union. Plaintiff held a full-time position as a potroom utility spare. On Sunday, January 26, 1986 at approximately 9:45 a.m., plaintiff was working in a potroom containing pots of molten aluminum and was preparing to take a regularly scheduled work break. He reached into his pocket to obtain some change for use in vending machines. Plaintiff removed a "smoking pipe" and held the pipe in his hands. The supervisor, Sam Broadhearst, saw the plaintiff and saw the plaintiff put the pipe in his mouth. The plaintiff stated that he blew into the pipe. Upon Mr. Broadhearst's approach the plaintiff put the pipe back into his pocket. When Mr. Broadhearst questioned him regarding the pipe, the plaintiff stated, "Are you going to fire me?" and Mr. Broadhearst responded, "You know the rules."

The rules referred to by the supervisor were contained in the Standard Code of Conduct and Guidelines issued by Kaiser. These rules are organized into four groups by importance and severity of punishment for infraction. In Group I—Intolerable Violations, rule number four states as follows:

No employee shall:

4. Be in possession of or under the influence of narcotics, alcohol or any intoxicant or use alcoholic beverages, narcotics or intoxicants on company premises at any time.

The penalty for violation of this rule (as well as others in Group I) is termination

from employment. At the time that plaintiff was hired, he reviewed and acknowledged in writing his understanding of and agreement to the rules. On or about August 27, 1984 a written notice was published to all Kaiser employees regarding the above-quoted rule. This notice was in response to an incident during which marijuana was used in the Kaiser parking lot and reiterated the intent of Kaiser to strictly enforce the rule regarding the prohibition of possession and use of narcotics and further explained the scope of the rule (Tab 2 to Affidavit of Theodore Romeo).

Mr. Broadhearst and the plaintiff left the potroom and went to the guard office. A Union representative was called and thereafter advised the plaintiff to hand the pipe to Mr. Broadhearst. The plaintiff was sent home and on January 27, 1986 Kaiser notified the plaintiff in writing of his violation of its rules of conduct. Subsequently, on February 7, 1986 plaintiff was terminated from employment with Kaiser. Fred Wilson, the Union representative advised and assisted plaintiff in filing a grievance. A hearing was held shortly thereafter and the plaintiff was represented by Paul Galvin from the Union. Mr. Galvin presented the plaintiff's version of the facts and argued for his reinstatement. During a break in the hearing, Mr. Galvin and the plaintiff agreed and notified the committee, upon the plaintiff's admission that he had a drug problem, that a lab analysis of the pipe would show residue of marijuana, that the plaintiff would be willing to enroll in a drug rehabilitation program and return to work on a two-year probationary period. Kaiser representatives rejected this offer by Mr. Galvin although, by written letter, Kaiser offered to pay for plaintiff's drug rehabilitation.

On February 19, 1986 Mr. Galvin advised the plaintiff that an arbitration proceeding (the next step in the grievance system) would not "get him anywhere". Thereafter, the plaintiff made several telephone calls during February to Mr. Galvin requesting further information on processing his grievance. These calls were not returned.

## DISCUSSION

A. The first issue presented is whether the cause of action against the Union is barred as being beyond the six-month statute of limitations.

■ The six-month statute of limitations is set forth in section 10(b) of LMRA, 29 U.S.C. § 160(b). Under federal law, the statute of limitations begins when the plaintiff knows "or in exercise of reasonable diligence should have discovered" the acts or injury which gives rise to the cause of action. *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir.1962). Here, the statute of limitations would begin to run from the date that plaintiff was advised that arbitration proceedings would not be held on his behalf.

The operative facts in the light most favorable to the plaintiff show that the plaintiff did not receive written notification of the Union's decision not to proceed with the arbitration. This does not affect when the statute of limitations begins to run. *Mertz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983). Further, the plaintiff was verbally advised by Paul Galvin that the Union did not intend to pursue the plaintiff's grievance rights under the Collective Bargaining Agreement with Kaiser sometime on or about February 19, 1986 with further unsuccessful communications attempted before the end of February 1986. The plaintiff, under the terms of Kaiser's Collective Bargaining Agreement, had until February 27, 1986 to file an appeal to arbitration. This was not filed. Plaintiff filed his complaint in state court on July 24, 1986 naming only Kaiser as a defendant. Thereafter, the cause of action was removed to federal court and on September 5, 1986, plaintiff filed a motion for leave to amend his complaint to add the Union. The Proposed Amended Complaint was filed along with the Motion to Amend pursuant to an order granting the motion on September 23, 1986.

Therefore, February 27, 1986 was the first day of the six-month limitation period. The six-month statute of limitations ran as to the Union on August 28, 1986, 26 days

before the filing of the Amended Complaint.

■ Plaintiff argues that the "relation back" doctrine set forth in FRCP 15(c) should be applied to waive the running of the limitations. This rule requires that in order for an amendment to relate back to the date of the original pleading, the claim asserted in the amended pleading must have arisen out of the same transaction set forth in the original pleading, the added party shall have received adequate notice of the pending action and will not suffer prejudice in defending its interest because of the late filing, and that the added party knew or should have known that, but for the error of the plaintiff, the action would have named him as a defendant originally. Notification of the institution of an action is not required to be formal notice. *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir.1984).

The court in *Korn, supra*, on review of previous Ninth Circuit case law, stressed the need to consider whether some type of notice was given to the added party and a demonstration that the added party would not be prejudiced by the late filing. *Korn*, at 1399 citing *Craig v. United States*, 479 F.2d 35, 36 (9th Cir.1973); *Williams v. United States*, 711 F.2d 893 (9th Cir.1983).

Here, the plaintiff has not shown that the Union had actual notice, either formally or informally. The plaintiff argues, however, that there was only a week delay before the motion to amend the complaint to add the Union, and four weeks from the date of filing and service of the amended complaint on the Union. Therefore, the Union could not possibly be prejudiced. In response, the Union has not shown any prejudice or alleged that it was unaware of the existence of the institution of this cause of action. The availability of Union representatives on the Kaiser premises would most likely have, at least informally, advised the Union of the law suit.

Without a showing to the contrary, and in spite of a rather weak showing of notice, it appears that some informal notice of the initial institution of the lawsuit was probably received by the Union. Therefore, there was only a four week delay from the running of the statute of limitations to filing and service of the original complaint. This is not unduly prejudicial to the Union and the amended complaint should relate back to the filing of the amended complaint.

B. The second issue presented by the Union is whether the Collective Bargaining Agreement requiring a duty of fair representation of a plaintiff was breached because of the Union's failure to request an arbitration hearing.

■ The basis and scope of the Union's duty of fair representation was most recently explained by the U.S. Supreme Court in *DelCostello v. Teamsters*, 462 U.S. 151, 164, n. 14, 103 S.Ct. 2281, 2290, n. 14, 76 L.Ed.2d 476 (1983). On the premise that the collective bargaining provisions of the NLRA adequately protect the individual interests of its members the court states:

> ... [I]t must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. (Quoting *Vaca v. Sipes*, 386 U.S. 171, 177 [87 S.Ct. 903, 909, 17 L.Ed.2d 842] (1967).)

Therefore, the test to determine whether a union has breached duty of fair representation is whether its conduct toward a particular union member is "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes, supra*, at 190, 87 S.Ct. at 916; *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

Based on the Supreme Court's recognition of wide discretion on the union's part in the representation of the members' interest, the Ninth Circuit (and other courts) have traditionally accorded "substantial deference" to a union's decision not to pursue a particular grievance. Accordingly, the fair representation doctrine is narrowly construed. *Johnson v. United States Postal Service*, 756 F.2d 1461, 1465 (9th

Cir.1985), as amended May 3, 1985, *Peterson, supra.*

With these principles in mind, the question presented to this court is whether the Union breached its duty of fair representation by deciding that further proceedings to protect the plaintiff's interest would be futile. The reasoning of the Union was a recognition of Kaiser's clearly stated policy prohibiting the possession and use of illegal drugs, including marijuana. The statement by the plaintiff immediately after he was caught by his supervisor shows the plaintiff's awareness that his behavior was within the prohibited conduct. Statements made at the grievance hearing indicated that the pipe did contain marijuana residue. At the time of the grievance, the issue that the written policy did not expressly prohibit possession of drug paraphernalia was not discussed. However, the Union did aggressively represent the plaintiff's interests until deciding that an arbitration hearing would not be worthwhile.

The Ninth Circuit has held that a union's conduct must balance a collective and individual's needs in making decisions about which claims are meritorious and warrant advanced advocacy. Similarly, in honoring the Union's wide discretion, courts must take care not to broaden the duty of fair representation, thereby encouraging law suits which result in a financial weakening of the Union. *Dutrisac v. Catapillar Tractor Co.,* 749 F.2d 1270, 1273 (9th Cir. 1983). Therefore, a union will be held responsible for its total failure to act when it is unexplained and unexcused and acts to completely extinguish the employee's rights to pursue his claim. *Dutrisac* at 1273. Non-action alone "will not be considered to be arbitrary, irrelevant, invidious, or unfair so as to constitute a breach of the duty of fair representation violative of the act. Something more is required." *Eichelberger v. N.L.R.B.,* 765 F.2d 851, 854–5 (9th Cir.1985) (quoting *General Truck Driver's Local 692 (Great Western Unifreight Systems),* 209 NLRB 446, 447–8 (1974). Each case must be determined on a case by case basis.

In following the rationale of *Dutrisac, supra,* as interpreted by the *Eichelberger* case, it appears that, where the Union has conscientiously evaluated the plaintiff's claim and finds it to be lacking substantial merit, the Union has not breached its duty of fair representation. Even though the plaintiff's rights were completely extinguished, the Union's nonaction does not rise to the level of arbitrariness, discrimination or bad faith.

■ The plaintiff further complains that the Union breached its duty of not fully investigating his claim for two reasons:

1. Its failure to ascertain the proper interpretation of the extent of the prohibited conduct regarding the possession of drug paraphernalia; and

2. "Serious doubts" about the adequacy of the laboratory report that indicated the smoking pipe contained marijuana residue.

The first contention is insufficient as a matter of law. Further investigating of the meaning and extent of the language of the rule prohibiting the use and possession of drugs would not likely have materially influenced the Union's decision. *Peterson v. Kennedy, supra* at 1255. The second reason is without merit given the plaintiff's admission at the time of the grievance hearing that the pipe contained marijuana residue.

C. The first issue presented by Kaiser is, if the Union did not breach its duty of fair representation, then does a cause of action remain against Kaiser?

■ This issue is predicated on the court's ruling that the Union did not breach its duty of fair representation and is resolved by the rule set forth by the U.S. Supreme Court in *Vaca v. Sipes, supra* 386 U.S. at 186, 87 S.Ct. at 914:

"[T]he wrongfully discharged employee may bring an action against his employer in the fact of a defense based upon the failure to contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance."

*See* also, *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 566, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).

The plaintiff submits evidence which establishes that a medical condition suffered by the plaintiff caused a certain amount of absenteeism. As a further consequence of this condition, the plaintiff has some difficulties in obtaining sickness and accident benefits paid by Kaiser. The plaintiff argues that an issue of material fact exists as to whether Kaiser terminated the plaintiff because of his infraction of the rules of conduct or because of his medical condition. In response, the defendant argues that plaintiff's position amounts to speculation, or his unsupported opinion of his termination, and it is insufficient to overcome a motion for summary judgment.

None of these contentions were brought to issue at any procedures established in the labor agreement with Kaiser and are not related to the matters which resulted in plaintiff's termination. The plaintiff doesn't argue that the Union has breached its duty of fair representation for a failure to remedy these problems related to his medical condition. Therefore, no issue of material fact is presented which supports plaintiff's cause of action against Kaiser.

D. The second issue presented by Kaiser is whether the plaintiff's claims for emotional and mental distress as state claims are preempted by federal law and subject to dismissal.

 Pursuant to *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) state claims which are inextricably intermeshed with claims arising under alleged breaches of labor agreements or contracts are preempted by Section 301 of the LMRA. The U.S. Supreme Court has established the following test:

> [W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties of the labor contract that claim must either be treated as a section 301 claim ... or dismissed as preempted by federal labor-contract law.

*Allis–Chalmers Corp., supra,* at 220, 105 S.Ct. at 1916 (citations omitted). *Olguin v.*

*Inspiration Consol. Copper Co.,* 740 F.2d 1468 (9th Cir.1984).

Here, plaintiff's claims for emotional and mental distress arise directly from plaintiff's termination from Kaiser's employment. Determination of the validity of each claim necessarily require consideration of the labor agreement and plaintiff's allegations of its breach. Plaintiff has not presented any evidence showing that the claim is not related to the alleged breach of the labor agreement between Kaiser and the plaintiff. Therefore, the claims for emotional and mental distress are preempted by federal law and should be dismissed.

### ORDER

For the foregoing reasons, this court hereby ORDERS:

1. Defendant Union's Motion for Summary Judgment based on the running of the six months statute of limitations is DENIED.

2. Defendant Union's Motion for Summary Judgment re duty of fair representation is GRANTED and plaintiff's claims against defendant Union are hereby DISMISSED;

3. Defendant Kaiser's Motion for Summary Judgment is GRANTED, and plaintiff's claims against Kaiser are hereby DISMISSED.